PRESTEX, INC.

v.

**The UNITED STATES.**

No. 558–82C.

United States Claims Court.

Dec. 2, 1983.

Theodore M. Kostos, Philadelphia, Pa., for Prestex, Inc.

Helene M. Goldberg, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

OPINION

LYDON, Judge:

On September 15, 1983, this court, 3 Cl.Ct. 373, entered a judgment dismissing the complaint in this case in accordance with the opinion of the same date. This judgment order contained the following no-

tation, "As to appeal, 60 days from this date, see FRAP [Federal Rules Of Appellate Procedure] 4(a)." As a result, any notice of appeal from this judgment was required to be filed on or before November 14, 1983, with this court. *See* FRAP 4(a)(1).

Plaintiff's effort to file its notice of appeal, received by the court on November 15, 1983, was properly rejected by the clerk of this court. Having been advised of this fact, plaintiff thereafter filed a "Motion To Extend Time For Appeal" pursuant to FRAP 4(a)(5) to which was attached an affidavit from a trial attorney in the firm of Stassen Kostos and Mason, P.C. It is to be noted that this trial attorney was not attorney of record for plaintiff, but was listed on the briefs in this case as "Of Counsel." In support of its motion, plaintiff cites as "excusable neglect" for its failure to timely file a notice of appeal the fact that the trial attorney calculated the expiration date of the appeal time as running from the date of receipt of the judgment (September 17) and not from the date of entry of judgment (September 15). The trial attorney stated "he was momentarily confused as to the last day on which the Notice had to be filed." He further stated "his momentary confusion was caused by a confluence of thoughts" regarding the old Court of Claims procedure and the Federal Rules regarding service and mailing time. Defendant opposes plaintiff's motion. Plaintiff's motion is denied.

It is established that the requirement under FRAP 4(a)(1), when the United States is a party, that a notice of appeal must be filed with this court within 60 days from the date of entry of judgment is mandatory and jurisdictional. *Browder v. Di-*

rector, Dept. of Corrections of Illinois, 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521, *reh'g denied,* 434 U.S. 1089, 98 S.Ct. 1286, 55 L.Ed.2d 795 (1978); *Sofarelli Associates, Inc. v. United States,* 716 F.2d 1395, 1396 (Fed.Cir.1983). However, FRAP 4(a)(5) provides that this court may extend the time for filing a notice of appeal upon a showing of "excusable neglect or good cause."[1] The question for consideration is whether plaintiff has established "excusable neglect" which would serve to justify the granting of its motion to file a notice of appeal after the expiration of the time prescribed by FRAP 4(a)(1).

What constitutes "excusable neglect" depends on the circumstances of each case. Some Federal Circuit Courts are more strict than others in interpreting the phrase. *See* 9 *Moore's Federal Practice,* ¶ 204.13[1] (2d ed. 1983). Since this court is under the appellate supervision of the Federal Circuit, it is prudent to look to the Federal Circuit for precedent and/or guidelines in areas such as this.

In *Danna v. United States,* Docket No. 106–79C, (order of June 17, 1983), this court found that counsel's error in computing the deadline for filing a notice of appeal constituted excusable neglect. Counsel in the *Danna* case mistakenly believed that Rule 6(c) of the Rules of this court and Rule 26(c) of the Federal Rules of Appellate Procedure—both of which allow for additional time after service by mail—applied to the filing of a notice of appeal under FRAP 4(a)(1). Defendant challenged this court's allowance of the filing of the notice of appeal out of time in the *Danna* case before the Federal Circuit.[2] By order dated Au-

---

1. The Advisory Committee Notes to FRAP 4(a)(5) indicates that the "good cause" standard applies only to those instances where the party seeks an extension before the expiration of the period prescribed by FRAP 4(a)(1). *See* 9 *Moore's Federal Practice* ¶ 204.13[1] (2d ed. 1983). In this case, the standard to be applied in considering plaintiff's motion for an extension of time to file a notice of appeal is "excusable neglect."

2. In support of its motion asking the Federal Circuit for an order dismissing the appeal in

*Danna,* defendant argued that the standard for determining "excusable neglect" was a strict one, citing *Selph v. Council of the City of Los Angeles,* 593 F.2d 881, 883 (9th Cir.1979), that it was limited to "unique and extraordinary circumstances," citing *United States v. Ferrer,* 613 F.2d 1188, 1190–91 (1st Cir.1980); and that, as a general rule, mistake of counsel is not recognized as excusable neglect, citing *State of Oregon v. Champion International Corp.,* 680 F.2d 1300, 1301 (9th Cir.1982); *Sprout v. Farmers Insurance Exchange,* 681 F.2d 587, 588 (9th

gust 17, 1983, the Federal Circuit summarily, and without opinion, granted defendant's motion to dismiss the appeal. On November 7, 1983, *Danna*'s motion to vacate the mandate of dismissal and to reconsider the prior order of dismissal *en banc* was denied. In its denial order of November 7, 1983, the Federal Circuit noted in support thereof, *inter alia,* its agreement "with Respondent's position that abuse of discretion lies in interpretation of counsel's mistake as excusable neglect," and "the applicability of the authorities cited in support of Respondent's Motion for Dismissal." [3] *Danna v. United States,* No. 83–1083 (Fed. Cir. Nov. 7, 1983).

■ In this case, as in the *Danna* case, plaintiff asks that the miscalculation of counsel in computing the appeal time be deemed to be excusable neglect. The summary granting of defendant's motion to dismiss and the rejection of counsel's mistake

as excusable neglect together with acceptance of the authorities cited by defendant in support of its dismissal motion by the Federal Circuit in its orders of August 17 and November 7, 1983, in the *Danna* case establish rather clearly that the mistake of counsel, without more, in this case would not be considered excusable neglect by the Federal Circuit, and that any such determination by this court to the contrary would be deemed an abuse of discretion.[4] Further, the summary action by the Federal Circuit in the *Danna* case suggests that the standard for determining excusable neglect in this court should be a strict one.

■ Plaintiff, however, belatedly adds another string to its bow.[5] In response to defendant's opposition to its motion to extend its time for appeal, plaintiff has submitted a second affidavit from the same trial attorney and an affidavit from an

---

Cir.1982); *and Spound v. Mohasco Industries, Inc.,* 534 F.2d 404, 411 (1st Cir.1976), *cert. denied,* 429 U.S. 886, 97 S.Ct. 238, 50 L.Ed.2d 601. However, there are courts which have recognized mistakes of counsel as excusable neglect. *See Feeder Line Towing Service, Inc. v. Toledo, Peoria & Western R.R. Co.,* 539 F.2d 1107, 1109 (7th Cir.1976); *Torockio v. Chamberlain Mfg. Co.,* 56 F.R.D. 82, 88 (W.D.Pa. 1972), *aff'd* 474 F.2d 1340 (3d Cir.1973); *Milwee v. Peachtree Cypress Investment Co.,* 510 F.Supp. 290, 291–92 (E.D.Tenn.1979).

**3.** In its motion for dismissal of the appeal in *Danna,* defendant, *inter alia,* stated that at least 7 of the 13 United States Courts of Appeal have dismissed appeals from their supervised district courts on the ground that the lower courts had abused their discretion in finding excusable neglect based on the mistakes of counsel. *Pinero Schroeder v. Federal Nat'l Mortgage Assoc.,* 574 F.2d 1117 (1st Cir.1978); *Fase v. Seafarers Welfare and Pension Plan,* 574 F.2d 72 (2d Cir.1978); *Pellegrino v. Marathon Bank,* 640 F.2d 696 (5th Cir.1981) (pro se defendant); *Files v. City of Rockford,* 440 F.2d 811 (7th Cir.1971), *Grantham Winchell v. Lortscher,* 377 F.2d 247 (8th Cir.1967) (interpreting Fed.R. Civ.P. 73(a) from which F.R.A.P. 4(a) was adopted without any substantive changes); *Sprout v. Farmers Insurance Exchange,* 681 F.2d 587 (9th Cir.1982); *Gooch v. Skelly Oil Co.,* 493 F.2d 366 (10th Cir.1974) *cert. denied* 419 U.S. 997, 95 S.Ct. 311, 42 L.Ed.2d 270.

**4.** It is well settled that a determination relating to whether or not excusable neglect has been established sufficient to justify allowance of a

notice of appeal under FRAP 4(a)(5) rests on the exercise of broad discretion by the trial court. *See Gann v. Smith,* 443 F.2d 352, 353 (5th Cir.1971); *see also Wansor v. George Hantscho Co.,* 570 F.2d 1202, 1206–07 (5th Cir. 1978), *cert. denied* 439 U.S. 953, 99 S.Ct. 350, 58 L.Ed.2d 344.

**5.** In his first affidavit, the trial attorney made no mention of possible medical problems. In his second affidavit, the trial attorney advised that his first affidavit was not full and complete because government counsel advised plaintiff's counsel it would not interpose an objection to plaintiff's motion. Upon becoming aware of the ruling by the Federal Circuit in *Danna v. United States,* No. 83–1083 (Fed.Cir. Nov. 7, 1983), defendant's counsel felt compelled to bring that and other relevant authority to this court's attention. In seeking relief under FRAP 4(a)(5) it is the view of this court that counsel is obligated, regardless of whether the other party intends to oppose or not, to set forth all reasons which would support a finding of excusable neglect. An abbreviated presentation to the court in order to preserve and protect the attorney's privacy is insufficient reason when the court is charged with determining excusable neglect. This is especially true in a jurisdictional situation such as is involved in dealing with an untimely notice of appeal. Further, such a course of action smacks of an after-thought response and raises doubts about the credibility of the belated assertions.

attorney who supervises litigation in the law firm for which the trial attorney works. In these affidavits, affiants suggest that the trial attorney's failure to timely file a notice of appeal was due to "inexplicable confusion" which may have been caused by the side effects of certain medications he has been taking to control hypertension. In essence, plaintiff advances illness of the trial attorney as excusable neglect for plaintiff's failure to timely file a notice of appeal.

In his second affidavit, the trial attorney advises for the first time that he has been taking prescribed medications for hypertension for 2 years. He further advises that he suffers periods of headaches, dizziness, depression and confusion as side effects of taking these medications, and that he believes that use of these medications "periodically impairs his mental alertness." He further advises that he had prepared the notice of appeal at least 2 weeks prior to November 14, 1983, and was awaiting word from the client (plaintiff) authorizing the appeal. On Monday, November 14, 1983, he avers, authorization to file a notice of appeal was received from the client by telephone, although a written authorization had been mailed earlier, but was not received by him until November 15, 1983. The trial attorney states in his affidavit that he believes that, as a side effect of the medications he had been taking, his "mental awareness was dulled and [he] thereby miscalculated the appeal period, as earlier stated as well as failing to have the Notice of Appeal hand delivered to the Clerk on the 14th of November, the date the Notice was executed." No doctor's statement or affidavit was submitted by the trial attorney on these matters, nor was there any indication in the affidavit of the trial attorney when his mental awareness became dull and when it once again became sharp. There is no allegation by the trial attorney that his "mental awareness was dulled" for the entire 59-day period preceding November 14, 1983.

The affidavit from the trial attorney's litigation supervisor states that he has known the trial attorney personally for over 5 years. On Tuesday, November 15, 1983, the trial attorney informed him that the notice of appeal was rejected as untimely and his deep concern was obvious to the supervisor. The supervisor asked the trial attorney if there was any medical problem which may have affected his calculation of the appeal time and his judgment regarding the method of transmission of the notice of appeal. The supervisor, in his affidavit, states that he then learned for the first time that the trial attorney was taking certain prescribed medications for hypertension. When the trial attorney mentioned the names of these medications, he researched them and discovered that three of the medications "potentiate one another and can impair mental alertness, judgment, physical coordination and reaction time." The supervisor concluded his affidavit as follows: "Because [the trial attorney] has never miscalculated an appeal period before[6] because the medicine he takes has a propensity to on occasion affect judgment and cause confusion, because the taking of medicine is necessary to his health, I firmly believe that his miscalculation and wrong choice of method of transmission of the Notice of Appeal are not attributable to ordinary neglect in any degree, but rather to medicine necessary to his well being." No doctor's statement or affidavit was submitted in support of this opinion. There is no evidence of the medical background of the supervisor which might add weight to his "medical opinion" and statements.

■ It is plaintiff's burden to demonstrate excusable neglect under FRAP 4(a)(5). *Craig v. Garrison*, 549 F.2d 306, 307 (4th Cir.1977). At best, the affidavits submitted by plaintiff suggest that prescribed medications might have affected the trial attorney's judgment and caused confusion on November 14, 1983. There are no asser-

---

6. In his first affidavit, the trial attorney states: "This is the first appeal to a Court of Appeals

which he has handled."

tions that these medications were, in fact, responsible for the trial attorney's actions. Moreover, the subjective nature of plaintiff's assertions, in the self-serving context of this matter, serve to detract from the weight one might otherwise give the affidavits in question. The opinions and beliefs offered by the affiants, unsupported by objective manifestations, are not from doctors or recognized medical authorities and thus are entitled to little weight. No persuasive evidence has been advanced to indicate, as a matter of fact, that the side effects of the medications in question resulted in the trial attorney's miscalculation of the due date for filing the notice of appeal and caused confusion over whether to hand deliver the notice to the court rather than send it Federal Express.[7]

Plaintiff relies on *United States v. Dabney,* 393 F.Supp. 529 (E.D.Pa.1975) where illness of counsel was found to constitute excusable neglect. In *Dabney,* a criminal case, a notice of appeal had to be filed within 10 days under FRAP 4(b). Counsel for *Dabney,* a sole practitioner, was prevented from filing a timely notice of appeal because of a viral infection which kept him at home for some 4 days. Upon return to his office, counsel promptly sought to extend the time for filing an appeal. There was no challenge to counsel's illness in *Dabney* and the United States did not oppose an extension of time within which to file the notice of appeal. The *Dabney* case is easily distinguishable from this case. First, it was a criminal, not a civil case. Courts are less exacting in their scrutiny of extension requests in criminal cases under FRAP 4(b) than they are under FRAP 4(a). *See* 9 *Moore's Federal Pratice* ¶ 204.19 (2d ed. 1983). Second, there was no dispute about the illness in *Dabney* being responsible for counsel's inability to file a timely notice of appeal. In *Dabney,* counsel was sick during 4 of the 10 days available for filing the notice. In this case, there is a serious question as to whether the prescribed medications were, in fact, responsible for the trial attorney's inability to file the notice of appeal on time. Moreover, counsel in this case had some 60 days within which to file the Notice. Further, the United States opposes the extension request in this case. Finally, counsel in *Dabney* was a sole practitioner, whereas the trial attorney in this case was a member of a law firm in which another attorney was attorney of record for plaintiff herein and still another attorney supervised litigation for the firm and ostensibly supervised the trial attorney in this litigation.

Quite apart from the unpersuasive nature of plaintiff's "illness of trial attorney" excuse, it is noted that the attorney of record for plaintiff has not submitted an affidavit in this case. Under our rules (*see* RUSCC 11 and 81(a), (d) the attorney of record is responsible for the conduct of plaintiff's litigation and the one individual the court looks to regarding the litigation as far as plaintiff is concerned. There is no contention here that the attorney of record in this case was unaware of the deadline for filing the notice of appeal, that he miscalculated the appeal running time or that illness, confusion or some other extraordinary incident prevented him from seeing to it that the notice was timely filed. As attorney of record for plaintiff this was his responsibility. Delegating that responsibility to a subordinate attorney does not, in the eyes of the court, relieve him of that responsibility.

In summary, this court will strictly interpret the phrase "excusable neglect" under the precedent of the *Danna* case, *supra.* Accordingly, mistakes of counsel

---

7. According to the trial attorney, the notice of appeal had been prepared 2 weeks prior to November 14, 1983. While he may have miscalculated the appeal time, this was his first appeal to a court of appeals; there is no reason advanced why the attorney of record or the attorney supervising litigation for the firm, should not be charged with awareness of the correct appeal due date. As was stated in

*Meza v. Washington State Dept. of Soc. & Health Serv.,* 683 F.2d 314, 315 (9th Cir.1982), "An efficient office operates with a reminder or tickler system that alerts to court imposed deadlines. Once that system notifies the approach of a critical date, the preparation and submission of a notice of appeal is largely clerical."

relative to the filing of an untimely notice of appeal will, as a general rule, not be interpreted to constitute "excusable neglect." While illness of counsel may, in appropriate circumstances, fall within the pale of excusable neglect, the illness relied on must be based on objective facts and medically supported, and not subjective in nature and speculative. Admittedly, the failure to file a timely notice of appeal in this case resulted from mistakes by the trial attorney. His contention that certain medications he was taking for hypertension may have dulled his mental alertness to take other steps which might have resulted in the filing of a timely notice of appeal is based more on conjecture and speculation, fueled by self-interest, than objective facts, and thus fails to persuade that illness of counsel was responsible for the trial attorney's mistakes. The totality of the materials now before the court do not favor the granting of plaintiff's motion.

Plaintiff's motion to extend the time for filing a notice of appeal under FRAP 4(a)(5) is denied.